Good morning, Your Honor. Tim Cullen. I'm CJA appointed. It is still morning. Yes, we got five minutes left at morning time. Yes, I'm appointed counsel on this appeal for Richard Mathews. He was convicted in the district court. Thank you, Your Honor. He was charged with five counts of filing false tax returns and one count of obstructing IRS operations. After a two-day trial in the district court in Little Rock, he was convicted and he was sentenced to 27 months. On appeal, Mr. Mathews challenges the sufficiency of the evidence on it as to both the obstruction charge and the five counts of filing a false return. I recognize that it is a high burden to ask you to reverse a criminal conviction on sufficiency of the evidence, but I think this case might warrant it. The standard of review is de novo, but you basically give all the brakes to the verdict. If any rational jury could find under those facts, then it has to be affirmed. However, a verdict cannot be affirmed on just speculation. The challenge that we raise to the five counts of filing false tax returns, as is the specific criminal intent that's necessary to sustain that charge. Mr. Mathews was audited in 1999. He'd been conducting the same type of business for over 25 years. His 1999 audit was clean. The auditor, Ms. Bowman, has since retired from the IRS, but she testified at trial that there were no changes to his returns in 1999. Mr. Mathews testified that he thought that meant that he was doing everything okay, and he continued to report his income and file his returns the same way. So rather than evidence of criminal intent, that suggests evidence of good faith reliance on IRS advice that he was doing things the right way. And so that's the opposite of criminal intent. He was referred again for an audit in 2005, and after several interviews with the agent, that was eventually referred to a criminal case, and these charges were brought. At trial, the government produced a spreadsheet based on Mr. Mathews' two bank accounts that showed all of the income over the course of five years that flowed through those two bank accounts. The government imputed that income to Mr. Mathews' taxable income that he didn't report. That evidence is inherently misleading, because it's only one side of the equation. The other thing they even attempted to account for was income. There was testimony that there would be business deductions that would come out of that income, that that was not all profit, that was only the gross income, and those numbers did not account for any of those deductions. Mr. Mathews testified, correct? Yes, he did. And did he provide any information about those business deductions? Not specifically, no, Your Honor. No. In general, he said, I didn't make all that money. And the way his business worked is a lot of that money flowed through him and was paid to other individuals. And he did not rebut that in detail, but he testified that that's not all profit to me. Were there any records on the payments to other individuals? Scant. Scant records, Your Honor. But with all due respect, I think it's the all sources, but to prove that that income is actually subject to tax and that the spreadsheet that was the government's main piece of evidence didn't do that. The U.S. says that your client failed to document and reveal the cash that he had or what he sent to Belize and so forth. Belize. Belize is a red herring in this case. Sir, electricity. Pardon me? It's an electric word. It is an electric word, and that's why it's prejudicial to Mr. Matthews and why it should have never been an issue in this case, because after he'd heard the two days of evidence and at the sentencing, Judge Leon Holmes commented that Belize has nothing to do with this case. There was never any evidence that any money flowed through Belize. This case wasn't about Belize. Belize was an extraneous fact that had no bearing on the income that the government was trying to impute to Mr. Matthews, but they just kept saying Belize over and over again because it's an electric word. It tended to make him look bad. And that's the other criticism I have of the bulk of the government's evidence in this case is it doesn't relate to this income that they claim that he didn't pay taxes on. It relates to things that were not charged offenses. The government spent an inordinate amount of time talking about Mr. Matthews' businesses, Wealth Team International, and there's another one. And what these are, they're internet-based, multi-level marketing enterprises. They're referral things where somebody pays you $100 and you pay somebody else $90 and it goes on down the chain. I don't pretend to those type of things, and I think the jurors probably were too. But the bottom line is that didn't have anything to do with the charges against Mr. Matthews. It was more evidence that just kind of tended to make him look like a bad guy. Other evidence the government cites too is that auditor's testimony, Ms. Bowman from 1999, she said he was asking about how to erase his social security number or whether the government actually had authority to That has nothing to do with the charges in this case. Mr. Matthews wasn't charged with failing to file returns. He did file returns. There's no evidence that he ever tried to hide his social security number from anyone. But that's just more stuff that the government stacks up, which tends to make Mr. Matthews look like a bad guy, but it has absolutely nothing to do with the charged offenses. And that's the type of evidence that I suggest is speculative. It's speculation. It's something that can't support a jury's verdict, finding specific intent to commit a criminal act. Did you object to the inclusion of that evidence at trial? I was not trial counsel. My recollection is there were not many contemporaneous objections about those things, but there were directed verdict motions on intent. So I contend that it's preserved in the the obstruction charge, obstructing I. R. S. Operations through a corrupt act. I'm not sure exactly what the corrupt act is that supports this from the government's case. But Judge Holmes at the at the conclusion commented about a lie that he said Mr Matthews told when investigators from the I. R. S. Were at his home for a six hour interrogation pursuant to a warning a warrant. And Mr Matthews said there was no cash in the house, and subsequently they found there was cash in the house. Again, there's that that cash was not seized. That cash was not included in the spreadsheet of things that they alleged that he didn't pay tax on. It's not an element of any offense, and there's no evidence that he stood to gain anything by by lying about that cash. Or perhaps he just forgot it was there. So I don't think that piece of evidence supports a charge of obstructing government operations. Refresh my memory about how much cash was in. There were two. As I recall, there was a $2000 in one box and 10,000 in another box. And that that money was released to Mr Matthews. It wasn't seized, and it wasn't an element of any of the charge defenses. So I know it's a high hurdle to ask about filing. Didn't he file some claims against the I mean, with those with those, uh, was that part of the case on obstruction that he surely vexatious action against the agents? Surely not, Judge. I think, you know, a person's entitled to complain about, uh, what they feel is overbearing interrogation or something like that. But that's kind of he just filed a complaint through some administrative process at the I. R. S. That's my understanding, Your Honor, and that there was a investigation and that there were no findings of. But But again, I don't think that's part of the record, and I don't think that's an element that was charged of any offense. And I think a citizen is entitled to complain about their treatment at the hands of a government agency if they feel like it's unfair. So with that said, I'm gonna reserve the balance of my time for rebuttal. Thank you. Jim Ferris. May it please the court. My name's Pat Harrison Little Rock. The evidence about Centurion Trust, the evidence about false statements to the agents, saying agents put guns to my daughter's head, say agents tried to take a bribe, say agents told me they could kill me. They could. They could bribe the prosecutor. The judge. All that was put in for count six, and it's all outlined in the superseding indictment. Those air all part of count six, the corrupt and persuade in the obstruction part. So all that was part of the case and was something we had to prove for count six. Where did he file these claims about the agents with the IRS? He went to the it's called the TIG, the Treasury. Yeah. Inspector General. Inspector General. I can't remember the name. And the government's position is that these were false and vexatious claims against the... Exactly. They were filed in 2009, two years before indictment. And he went to the... It's the internal affairs, the internal affairs. And he said they put guns to my daughter's head. He said the revenue agent, Thurman Crawford, who testified, tried to get a $9,000 bribe in 2008. He said these agents told me a story about if I don't cooperate. There was some people in Texas, some cops in Texas that killed kids, and this could happen to my kids. I mean, just outrageous stories that he was trying to get this investigation stopped. And so we put on evidence of that in addition to his conversations in 1999 with the auditor, Rebecca Bowman, about, I don't wanna pay taxes, I don't want a social security card, how do I get a trust? And then with the revenue agent, the revenue agent testified that when I first started talking to him in 2007, he told me he had one account, then I found out there's another. And so it just goes on and on and on. Now, as to the money, as to the no expenses, actually the internal revenue, Schedule C says, list your gross receipts. We could prove through the bank documents of Mr. Matthews, how much money he got into either his personal account or into an account which he only controlled through this MMS stuff. And for example, in 2004, he got $63,000 came into him, and his gross receipts, which he should have put on his tax returns, he puts $3,400 or $3,500. Well, he could have taken expenses, except the agent, Eric Williams, testified that the expenses, which is the money he paid back to all the people who were sending money, were coming out of PayPal and coming out of eGold and all these internet servers. So he was getting it after the expenses were paid, and so he should have put that on his tax returns. And that was the whole point of putting how much money he got every year. And what's interesting is the first two years, 2004 and 2005, he filed joint returns, he got refunds. Then, in 2006, he said he had zero income, and we could show he had $57,000. Then Thurman Crawford, the revenue agent, talked to him, and then he changed and he started filing individual tax returns and not joint tax returns. All that coupled together showed that he knew what he was doing, and he had an intent to not pay his income and not report his income. And he did testify at length, and on cross, I said, here are your bank records. Show me the bank records where you have expenses, where you paid expenses out. He couldn't find a single one because they're not there. And then he said, well, there's another account that you just didn't find, it's at the same bank. Well, we all know that's not true, but that was his defense. That's all I have. Thank you very much. Thank you. So you got another editor, so yeah. So what about that? He says, yes, it was all in the record that your man made these false allegations against the agents. I thought, maybe I misunderstood, but I thought you were suggesting that that was not in the record. There was nothing in the record about that. Judge, I'm not gonna... Mr. Harris knows the record better than I do. He tried this case. I'm not gonna argue with him about that, but I'm gonna suggest that... I don't think you can charge a criminal offense for a citizen making a complaint about the people that are charging him with a criminal offense. Well, if it's a good faith complaint, but at some point, if it's false and vexatious, don't you suppose that could be sufficient? You don't think so? Mr. Matthews, and I'm torn on how to say this, Judge, but he has a deeply held personal belief that he was persecuted in this affair, and to an objective observer, they might not see it the same way, but having visited with him for several hours, I can tell you that that is the truth through his eyes, and that's the most careful, cautious way I can say that, Your Honor. My time's expired. I appreciate the opportunity to present an argument. Was there something else you wanted to say, Judge Cullinan, in saying you took your time? I think we've covered it. Alright. Okay, thank you very much. Thank you.